### GREEN, Executrix of GREEN *vs.* JOHNSON, *et ux.* December, 1831.

The inventory of a deceased testator's estate, and the accounts thereof, as filed in the Orphans Court by his executor, are admissible evidence in an action of *assumpsit,* brought by a child of the deceased, against the executrix of such executor; the latter having been the guardian of the child, and the object of the suit being to recover property of the ward, which he as guardian, was charged with having converted to his own use, and assumed to pay upon the liability resulting from the conversion.

To such an action, the act of limitations is a bar, after the lapse of time required by its provisions, there being no evidence to rebut it.

In a court of law there is no such head of pleading as trusts.

By the common law a *cestui que trust* has no standing in court, in *propria persona,* he can only assert his rights in a Court of Chancery.

Courts of common law, to prevent fraud and injustice, will protect the rights of *cestui que trusts;* but this is done in the exercise of a *quasi* equitable jurisdiction, as where an appeal is made to the justice and discretion of the court, by way of motion, the matter whereof cannot be insisted on as a legal right, or presented in the form of a plea.

An action of account is the only action that can be brought against a guardian, *qua* guardian, in a court of law, other than an action on his bond.

Limitations apply to the action of account.

As soon as a trust ceases to be a continuing subsisting trust, or expires by its own limitation, or is put an end to by the act of the parties, if it be a fit subject for a suit at law, a cause of action arises, and the act of limitations begins to run.

The case of *Grant vs. Bell,* 4 *Harr. and McHen.* 419, overruled.

APPEAL from *Charles* County Court.

This was an action of *Assumpsit*, commenced by the appellees, *James Johnson*, and *Mary* his wife, (formerly *Mary Coomes*,) on the 17th August, 1826, against the appellant, *Elizabeth Green*, executrix of *James R. Green*, deceased, which said *James R. Green*, and *Teresa* his wife, also deceased, were the executors of *William Coomes*, the father of the appellee, *Mary*. The present action was brought to recover a sum of money, alleged to be due the appellee, *Mary*, from her guardian, the testator of the appellant, *J. R. G.*

. The pleadings and evidence in the cause, are fully stated by the learned judge, who delivered the opinion of this court.

From the verdict and judgment of the County Court in favor of the plaintiffs, the defendant appealed to the Court of Appeals.

The cause was argued before BUCHANAN, Ch. J., EARLE, ARCHER, and DORSEY, J.

*Stonestreet*, for the appellant, cited, 2 *Stark. Ev.* 900. *Bloodgood vs. Kane,* 7 *Johns. Ch. Rep.* 90.

*C. Dorsey,* and *Brawner*, for the appellees, cited *Kelly vs. Greenfield*, 2 *Harr. and McHen.* 144. *Grant vs. Bell*, 4 *Ib.* 419.

. DORSEY, J., delivered the opinion of the court.

The declaration in this case contains four *counts.* The *first,* for sundry matters properly chargeable in account. The *second,* for money paid, laid out and expended; for money lent, and advanced ; for money had and received; and on an *insimul computassent* with the defendant's testator. The *third* count charges, that *James R. Green,* was appointed in 1804, guardian to *Mary,* one of the plaintiffs, and as such, possessed himself of all the personal estate of his ward, consisting of negroes, horses, and other stock; and received therefrom the increase, hires, issues, and profits of said property, amounting in the whole to the sum of $2000. That not regarding his duty, he wholly refused to pay over this property, or any part thereof, but converted the same to his own use ; by reason whereof, he became liable to pay, and being so liable, promised to pay the said sum of money when requested. The *fourth* is on an *insimul computassent* with the defendant as executrix. To this declaration, the defendant pleaded, *non assumpsit* by the testator; *non assumpsit* by the defendant's executrix ; *non assumpsit infra tres annos* by the testator; and *non assumpsit infra tres annos,* by herself. Issues were joined on these pleas ; and an account in bar was filed by the defendant, to which *non assumpsit,* and limitations being pleaded, issues were taken thereon. After the evidence had gone to the jury, consisting of the inventory of *William Coomes'* personal estate, appraised for distribution in 1805, and distributed accordingly at that time, the share of the plaintiff *Mary,* consisting of specifics, valued at $585 41, and of the final account of *William Coomes'* estate, passed by the testator ; and of his account as guardian to *Mary,* passed in December, 1809, shewing a balance of £231 7s. 5d. and of the proof that she arrived to the age of sixteen in October, 1809, and that she lived, during the years of 1810 and 1811, in the family of the testator; and that $100 per year, was a reasonable charge for board during that period ; which two years' board, formed one of the

items in the account in bar ; the plaintiffs prayed the court to instruct the jury, that the defendant was not entitled to the allowance claimed for *Mary's* board, under the pleadings in this cause; which instruction the court gave; and in their doing so, we see nothing to disapprove. The defendant thereupon prayed the court to instruct the jury, that the plaintiffs were not entitled to recover in this action, if they should be of opinion from the evidence in this cause, that the cause of action had been more than three years standing, " previous to the impetration of the original writ in this cause." But the court were of opinion, and instructed the jury, that limitation was no bar to the recovery in this action. To which the defendant excepted.

The plaintiff having offered as evidence to the jury, the inventory of *William Coomes'* estate, and the several accounts passed with the Orphans Court by the testator, and *Teresa* his wife, executrix of *William Coomes,* the defendant objected to their admissibility. But the court, and we concur with them in opinion, overruled the objection. This forms the defendant's second exception.

In the third bill of exceptions, the defendant prayed the court to instruct the jury, that unless they should find from the testimony, that *James R. Green* or his executrix, made some assumption, or acknowledgement of the debt, within three years next before the impetration of the original writ in this cause, the plaintiffs were not entitled to recover. Which opinion the court refused to give; and to such refusal the defendant excepted. Were the County Court right in refusing the defendant's prayers, in the first and third bills of exceptions, and in instructing the jury, "that the act of limitations is no bar to the recovery of this action?" are the questions we are called on to consider.

To sustain the decision of the court below, it has been urged in the argument, that the defendant's testator, being the guardian of the plaintiff *Mary,* held the property for which this action was instituted as her trustee ; and that the statute of limitations presents no bar to a trust. But to this

doctrine we cannot assent. If sitting as a Court of Equity it might deserve some consideration. But in the character in which we now sit, we know of no such head of pleading as trusts. By the common law, a *cestui que trust* has no standing in court, in *propria persona ;* he can only assert his rights in a Court of Chancery. The plaintiffs, by insisting that the defendant stands to them in the relation of trustee, surrender their right of action, unless by some statutable provision they are made competent to enforce it. It is not pretended, that any such enactment exists. It is true that courts of common law, to prevent fraud and injustice, will protect the rights of *cestui que trusts ;* but it is done in the exercise of a *quasi* equitable jurisdiction— where an appeal is made to the justice and discretion of the court, by way of motion, the matter whereof cannot be ininsisted on as a legal right, or presented in the form of a plea. Suppose that instead of taking issue on the plea of limitations, the plaintiffs had replied, that they ought not to be barred, &c. because the defendant was their trustree, &c. could such a replication, on demurrer, be sustained for a moment ? For such a plea, as far as our researches have extended, no precedent can be found. But if the plaintiffs designed to sue in their character of *cestui que trusts*, they should have so presented their cause of action in the declaration, that the question on the plea of limitations, might have been met by a demurrer. Except the point arise on demurrer, that which can be relied on as a defence against the statute of limitations, must be pleaded in bar to its operation ; and it is not admissible in evidence for that purpose, unless put in issue by the pleadings in the cause. To the first, second, and fourth counts, therefore, the plea of limitations is a conclusive bar. Is it not equally so, as to the third count ? The defendant's testator is there charged, with having received the property of the plaintiff *Mary*, as her guardian, and converting the same to his own use, and in consideration thereof, promising the plaintiffs to pay them $2000. What is it, that is sought to

be recovered under this count? Is it the property which the guardian had been in possession of as a trustee? No—It is a sum of money, an equivalent therefor, which the guardian has promised to pay to the plaintiffs; and the payment of which vests in him, and those claiming under him, an indefeasible title to such property. With respect to the sum of money thus promised, can it be pretended that the testator held it as a trustee? Has it a single attribute of a trust? On the contrary, is it not a contract strictly legal, which can be sued on in a court of law, and no where else. To such a cause of action, the statute of limitations must be available as a bar.

But waiving all advantages which the pleadings of the plaintiffs, give to the defence taken by the defendant; and assuming that the present were an action of account, which is the only action other than one on his bond, that can be brought against a guardian, *qua* guardian, in a court of law; would the condition of the plaintiffs, as respects the plea of limitations, be changed for the better? In our opinion it would not. The act of assembly is explicit, is positive; it leaves nothing on the subject, on which conjecture or freedom of construction can operate. "All actions of account, shall be sued within three years, ensuing the cause thereof." It has justly been denominated "a statute of repose;" and is one of the most important, and beneficial legislative enactments which our statute book contains. This is not the epoch, when that salutary protection, which the legislature have wisely thrown around us, as a safeguard against fraud and oppression, should be frittered away by judicial refinements, and subtile exceptions that never entered into the contemplation of its enlightened framers. For many years it has been a subject of avowed and sincere regret, with the most distinguished judges, and eminent jurists of the age, that any constructive innovations were ever engrafted on this statute. We certainly are not disposed to increase the number of such interpolations.

The cases met with in the books, which have given birth to the notion, that trusts form a new exception to the statute of limitations, warrant no such conclusion. The questions have been, not whether being within its letter, they were excluded by the spirit of the statute, and were therefore excepted from its operation, but whether they came within its letter. If *A* place merchandise in the hands of *B*, to be sold for the use of *A*, and *B* not selling, retain possession for seven years, when *A* demanding a return, and being refused, brings trover or replevin for the goods, the plea of limitations would be no bar to a recovery; because until the demand, he had no cause of action, and therefore the case is not within the letter of the statute. But if the demand and refusal, had been within one year after the delivery, then the plea of limitations would be a bar; a cause of action existing from the time of the demand, it is clearly within the express terms of the statute. As soon as a trust, ceases to be a continuing subsisting trust, or expires by its own limitation, or is put an end to by the act of the parties, if it be a fit subject for a suit at law, a cause of action arises, and the statute of limitations begins to run. The moment a ward is emancipated from the authority of his guardian, by reaching the age prescribed by law, his cause of action is complete. The relation which existed between them, ceases to be a subsisting trust: an action of account may be immediately instituted in a court of law, and from that time, the act of limitation dates the commencement of its operation. The saving in favor of infancy, gives to females after arriving at the age of twenty-one years, the same time for the assertion of their rights, that is allowed to the other sex.

Should the doctrine which prevailed in the court below be sustained, what prudent man would consent to be a guardian? His accountability would know no termination. Fifty years after the deaths of both guardian and ward, the representatives of the latter might sue those of the former, in a court of law, and require proof as to the mode, in which

the property of the ward had been managed, and paid over ; and the statute of limitations would afford no protection. By the restriction which we have deemed applicable to the rights of the ward, he is subjected to no inconvenience or injury. The same measure of justice which is extended to every other adult in the community, is conceded to him; and he has other remedies, and three distinct tribunals, where ample justice can be obtained. If by his unreasonable *laches* in regard to time, he does not forfeit all claim to redress, he can obtain full relief by proceeding against his guardian, in the Orphans Court; or by suit on his guardian's bond in a court of law ; or by calling on him to account for his stewardship in a Court of Chancery.

If however, in a proper state of pleadings to raise the question, the pleas of limitation would form no bar to the plaintiff's right of recovery in this action, were the court under the issues joined in the cause, justified in refusing the defendant's prayers, in the first and third bills of exceptions ? Had the plaintiff designed to urge this objection to the pleas, he ought either to have demurred to them, or if allowable in pleading, by his replication to have set out the matter of avoidance, by which he sought to evade the operation of the bar. Instead of doing this, he took issue on the pleas, and thereby admitted their legal sufficiency, and applicability. The question then for the determination of the jury, was the truth of those pleas. With their effect they had nothing to do. The plaintiffs had confessed upon the record, that if true, the jury must find a verdict against them. The instructions asked for, were of nothing more than was admitted on the reccord ; and consequently the court were bound to have given them. By the instruction which was given, the jury were in effect, directed, that although they should find the facts in issue, in favor of the defendants, yet, that they were bound to render their verdict for the plaintiffs.

The only case we have met with appearing at all to conflict with any of the views we have taken of the case be-

fore us, is that of *Grant vs. Bell,* 4 *Harr. and McHen.* 419, decided by the late General Court, at October term, 1799. The plaintiff there having brought an action for money had and received, to which *non assumpsit* and limitations were pleaded, " gave evidence to the jury, that the defendant as his agent, had received the sum of £78 for the rent of certain lands belonging to the plaintiff, and which the defendant had rented out for him. The defendant then proved that £40 14*s.* part of the said sum of £78 had been received more than three years before the action was commenced ; and thereupon prayed the court's instruction that the plaintiff could only recover, what was received within the last three years. But the court were of opinion that the statute of limitations was no bar to any part of the plaintiff's claim. For this laconic opinion no reasons are assigned. If, as has been contended for in the argument, the General Court regarded this case as a case of trust, and therefore, not within the spirit of the statute, they would have so stated; and not left this opinion of less than three lines, to rest, as to the principle on which it turned, on vague conjecture. If, as is more probable they regarded *Bell* as holding this money under a continuing trust, and that he was not bound to pay it over without delay, we cannot concur with them in opinion. There is nothing to shew that it was the intention of *Grant* and *Bell,* that the latter should keep possession of the money received, for the purpose of investment, or any other appropriation. On the contrary, we conceive that there was an implied engagement, a legal obligation on the part of *Bell,* when a payment was made to him, without delay to pay it over to *Grant,* and not retain it in his hands without object. That having failed to do this, *Grant* had an immediate right of action against him ; and that there was nothing in the relative situation of the parties, which could postpone the operation of the act of limitations. We do not therefore, hold ourselves bound by the authority of that case, even admitting that its cir-

cumstances were more analogous to those of the case at bar, than they appear to be.

We concur with the County Court in their opinion in the second bill of exceptions; but dissenting from their opinion, and refusal of the defendant's prayers, in the first and third bills of exceptions, we reverse their judgment.

JUDGMENT REVERSED, WITHOUT PROCEDENDO.