690 A.2d 509

**Regina H. KANN**

v.

**Donald R. KANN et al.**

**No. 22, Sept. Term, 1996.**

Court of Appeals of Maryland.

March 11, 1997.

692

Jeffrey L. Forman (Bruce E. Kauffman, Kauffman and Forman, P.A., on brief), Towson, for Petitioner.

Peter F. Axelrod (Adam S. Caldwell, Jackson & Campbell, P.C., on brief), Baltimore, Andrew Jay Graham, argued (Kevin F. Arthur, Kramon & Graham, P.A., on brief), Baltimore, for Respondents.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and ROBERT C. MURPHY, Judge (retired) Specially Assigned.

RODOWSKY, Judge.

We hold today that allegations of breach of fiduciary duty, in and of themselves, do not give rise to an omnibus or generic cause of action at law that is assertable against all fiduciaries, including trustees of express trusts. Accordingly, here, where the beneficiary of an express trust sues the trustee, the claim is exclusively equitable and not triable of right before a jury.

The litigation arises out of the following facts. In August 1974 Frances O. Kann (Frances) died, testate, leaving a portion of her estate to her then husband, Louis M. Kann, Jr. (Louis), and creating a trust of the residue. Under that trust (the Frances Trust) Louis received the income for his life, and the remainder was divided, free of trust, evenly between the children of Frances and Louis. They had two children, Donald R. Kann (Donald), who is one of the respondents, and Lois K. Fekete (Lois). Frances's will designated Louis as sole trustee.

In 1976 Louis remarried, but that marriage lasted only one year. In 1979 Louis married the petitioner, Regina H. Kann (Regina). The marriage of Louis and Regina lasted fourteen years, until Louis's death, testate, on December 18, 1992.

Louis's will created a trust (the Louis Trust), the income from which is to be paid to Regina for life. That trust also contains a broad, discretionary power of invasion of corpus for the purpose of maintaining Regina's accustomed standard of living. Upon Regina's death the remainder of the Louis Trust, in general, is to be divided one-half to Lois and one-half equally to Donald's two children, Aaron and Burton. Donald

was named personal representative of Louis's probate estate and sole trustee of the Louis Trust.

Several days after Louis's death, Donald engaged counsel. They are the attorney respondents, Venable, Baetjer and Howard (Venable), and Alexander I. Lewis, the head of Venable's estates and trusts practice group.

In late 1992 or early 1993 Donald found in Louis's records evidence that Louis may have misappropriated funds from the Frances Trust.[1] Venable advised Donald to continue his review to determine if there was a pattern or whether the apparent diversion was an isolated incident. Over the succeeding ten months Donald and his wife, Joanna B. Kann, discovered further indications of misappropriations from the Frances Trust. For example, Louis had sold stock owned by the Frances Trust and applied over $35,000 of the proceeds toward the purchase of the condominium in which Regina continued to reside.

On March 31, 1993, Donald applied to the Circuit Court for Baltimore City for appointment as successor to Louis as trustee of the Frances Trust, and Donald was so appointed.

By November 1993 Donald concluded that Louis had misappropriated over $118,000 from the Frances Trust. Donald further estimated that the loss from the lack of investment income on the $118,000 increased the total loss suffered by the Frances Trust to approximately $195,300. He reported these findings to the attorney respondents who advised Donald to transfer assets of Louis's estate valued at $195,300 into an account in the name of the Frances Trust, pending a final resolution of the matter (the segregated assets).

In December 1993 Donald filed a "supplemental" inventory in the Orphans' Court of Baltimore City, reporting that certain assets originally inventoried were held by Louis only as

---

1. Donald had discovered an August 1992 deposit of $10,412.71 into Louis and Regina's joint checking account. The deposit was considerably more than the typical deposits into the account, and the funds came from the sale of a U.S. Treasury Bond that was an asset of the Frances Trust.

trustee of the Frances Trust and were not part of Louis's individual probate estate. The orphans' court, in January 1994, approved the inventory modification and the accompanying First and Final Administration Account. Regina was not advised of this orphans' court proceeding.[2] After the assets in question were segregated from the Louis Trust, Donald sent Regina a memorandum, with attached exhibits, detailing Louis's apparent misappropriations of principal from the Frances Trust.

In April 1994, Donald, in his capacities as personal representative of Louis's estate, trustee of the Louis Trust, and successor trustee of the Frances Trust, together with Lois, Aaron, and Burton, filed a complaint for declaratory judgment in the Circuit Court for Baltimore City. Regina was named as defendant. After reciting the foregoing facts, the complaint sought a declaration of the rights and obligations of the parties with respect to the segregated assets.

In her answer to the complaint Regina prayed a jury trial. She also filed a counterclaim that included a request that "the case" be tried before a jury. The counterclaim was amended twice.

As originally filed and as amended, the counterclaim never flatly alleged that Louis individually and beneficially owned the $118,000 of assets that had been traced to him from the Frances Trust. Instead, Regina initially alleged that Donald violated his fiduciary duty, as a trustee of the Louis Trust and as personal representative of Louis's estate, by:

—aiding the Frances Trust, in which Donald had a beneficial interest, at the expense of the Louis Trust;

—asserting that assets of the Louis Trust were illegally procured;

—sharing information between the two trusts;

---

**2.** As an heir and a beneficiary of the Louis Trust, but not a legatee, Regina was no longer an "interested person" in the probate estate of Louis. *See* Maryland Code (1974, 1991 Repl.Vol.), § 1–101(f), (g), and (k) of the Estates and Trusts Article.

—failing to have informed Regina earlier than he did;

—creating a conflict of interest by petitioning to succeed Louis as trustee of the Frances Trust; and

—failing to raise procedural defenses, including lack of timeliness, and unspecified substantive defenses to the claim against the probate estate of Louis that was made by the Frances Trust.

Regina labeled the allegations of Counts I through III of her counterclaim against Donald, "Breach of Fiduciary Duty of Trustee," "Fraud of the Trustee," and "Malfeasance of Office." [3]

The counterclaim also joined the attorney respondents as counterclaim defendants. Counts IV and V alleged that the attorney respondents knowingly participated with Donald in his alleged breaches of trust and that the attorney respondents were negligent. Their malefactions were said to be counseling Donald to perform, or directly performing, the acts previously alleged. Count VI labeled the alleged conduct of all of the respondents as a "Civil Conspiracy."

By her first amendment to the counterclaim, Regina added Count VII, alleging that all respondents "acted in a way to wrongfully exercise dominion and control over the assets of the Louis" Trust. Hereinafter we refer to Count VII as the "conversion claim."

Regina's second amendment to the counterclaim added Counts VIII through XII for the purpose of making plain that Regina sought Donald's personal liability on the allegations of Counts I, II, III, VI, and VII, respectively. Regina did not want to chance limiting her recovery to the segregated assets, or to the assets of the Frances Trust, inasmuch as she sought $15 million in punitive damages from Donald on Counts II, IX, and XII, respectively, and $27 million in punitive damages

---

**3.** Count III concerned whether the amount of the payments to Regina during the pendency of the dispute sufficiently invaded principal to meet the standard of the Louis Trust. That aspect of the controversy is not an issue in this Court.

from Donald, jointly and severally with the attorney respondents, on Counts VI and VII.

The circuit court dismissed Regina's counterclaim against all of the respondents for failure to state claims upon which relief could be granted. The merits of the declaratory judgment claim were then tried at a bench trial. It resulted in the following declaratory judgment, docketed January 20, 1995: "As to initial issues, the trier of fact found that Donald Kann did not breech [sic] his duty as the trustee for the Louis Kann Trust, and he properly moved the money."

Regina appealed to the Court of Special Appeals which affirmed in an unreported opinion. That court analyzed Regina's position in the alternative. The court held that Regina's counterclaim sought to state causes of action at law, but that Regina had failed to allege any exception to the general rule prohibiting a beneficiary from suing a trustee at law for breach of the trust. Alternatively, the court reasoned that, even if Regina could properly sue at law, her allegations were legally insufficient. In the latter connection the intermediate appellate court concluded that breach of fiduciary duty does not exist as a tort in Maryland. With respect to the conversion claim the court determined that Regina had no standing to sue because she was not entitled to possession of the assets. The trial court's findings that, in essence, Donald had acted properly were held not clearly erroneous. As to the attorney respondents, the Court of Special Appeals ruled that they owed no duty to Regina.

Regina petitioned this Court for certiorari, which we issued. Here, Regina does not challenge the factual findings made by the trial court in the declaratory judgment action, and, with one exception, discussed below, Regina does not challenge the legal conclusions of the trial court on the declaratory judgment claim. Her principal argument in this Court is that her counterclaim raised issues cognizable at law on which she was entitled to a jury trial. Consequently, she submits that the jury trial should have proceeded first on common issues, so that the judgments on all of the claims should be vacated and

the action remanded for trial before a jury. In this Court Regina focuses on her asserted right to sue Donald for breach of fiduciary duty as a tort, on her asserted standing to sue Donald at law on the conversion claim, and on the asserted legal duty owed to her by the attorney respondents.

Donald has moved to dismiss certiorari review on the ground that the adjudication on the merits of the declaratory judgment claim has mooted the dismissal of the counterclaim and because the judgment on the declaratory judgment claim is *res judicata* or raises a collateral estoppel bar to further proceedings.[4] On the merits Donald and the attorney respondents submit that Regina's counterclaim was legally insufficient. Donald further submits that, in any event, Regina's counterclaim was not triable to a jury.

Procedurally possible under Donald's complaint for declaratory judgment was the entry by the circuit court of a declaratory judgment that was the opposite of the judgment that Donald sought. *See Harford Mut. Ins. Co. v. Woodfin Equities Corp.,* 344 Md. 399, 414–15, 687 A.2d 652, 659–60 (1997). The circuit court fully litigated whether Donald breached fiduciary duties to Regina, defrauded Regina, was guilty of malfeasance toward Regina, or converted assets of the Louis Trust. The court determined that Donald had not breached his trust. Indeed, the trial also resulted in a judgment confirming the transfer of assets then valued at $197,031 to the Frances Trust. Consequently, unless the action, or some part thereof, should have been tried to a jury, as Regina contends, it is now immaterial whether Regina's counterclaim stated one or more causes of action. Regina's claims failed, at least in a court trial, when the time came to prove her allegations against Donald. Further, if Donald's acts and omissions were not civil wrongs against Regina, then, by counseling or participating in those acts and omissions, the

---

**4.** Donald's motion to dismiss the appeal is denied. There was no final judgment in this action until the declaratory judgment was docketed. Further, arguments for affirmance of the judgment under review are not grounds for dismissal of the appeal.

attorney respondents cannot have committed civil wrongs against Regina.

For these reasons, the myriad questions presented by the parties to this Court can be condensed. As condensed, the first question is whether Regina was entitled to a jury trial on any issue in the action. If she were, the judgments below must be vacated and the action remanded for further proceedings. If the issues were properly tried to the court then the only remaining issue involves Regina's contention that the circuit court erred in the trial of the declaratory judgment claim by failing to hold that Donald, as a matter of law, could not honor the claim of the Frances Trust against the estate of Louis because that claim was absolutely time barred under Maryland Code (1974, 1991 Repl.Vol.), § 8–103 of the Estates and Trusts Article (ET).

## I

Professors Wright and Miller have said that "[d]etermining which actions belong[ ] to law and which to equity for the purpose of delimiting the jury trial right continues to be one of the most perplexing questions of trial administration." 9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 2302, at 18 (1995). In this state, Article 23 of the Declaration of Rights, as amended in 1992, provides in part that "[t]he right of trial by jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five thousand dollars, shall be inviolably preserved." The right preserved is " 'the historical trial by jury, as it existed when the Constitution of the State was first adopted.' " *Luppino v. Gray,* 336 Md. 194, 201, 647 A.2d 429, 432 (1994). The Constitution of 1851, Art. X, § 4, was the earliest of this state's constitutions explicitly recognizing preservation of the right to trial by jury in civil proceedings. *Id.* at 200, 647 A.2d at 432.

Maryland Rule 2–325(a) regulates the election of trial by jury "of any issue triable of right by a jury...." Here, Regina prayed a jury trial on the issues raised by the com-

plaint for a declaratory judgment. Regina, however, does not contend that, absent her counterclaim, she would have been entitled to a jury trial on the declaratory judgment claim. Nevertheless, it is helpful to the analysis of Regina's arguments based on the counterclaim first to review whether the declaratory judgment claim was triable to a jury.

The Maryland Uniform Declaratory Judgment Act, Md.Code (1974, 1996 Repl.Vol.), §§ 3–401 through 3–415 of the Courts and Judicial Proceedings Article (CJ), provides that "[t]he fact that a proceeding is brought under this subtitle does not affect a right to jury trial which otherwise may exist." CJ § 3–404. Thus, prior to the 1984 procedural merger of law and equity, *see* Rule 2–301, a declaratory judgment proceeding could be brought on the law or equity side of a circuit court. *Himes v. Day,* 254 Md. 197, 206, 254 A.2d 181, 186 (1969). The Maryland Uniform Declaratory Judgment Act "vest[s] in the circuit courts the power to render a substituted noncoercive remedy for what might have been available at law or in equity[.]" R.W. Bourne & J.A. Lynch, *Merger of Law and Equity Under the Revised Maryland Rules: Does It Threaten Trial By Jury?,* 14 U. Balt. L.Rev. 1, 50 (1984) (footnote omitted). Consequently, in determining whether there is a right to a jury trial on issues raised by a complaint for declaratory judgment, "the circuit court must look to the underlying circumstances to ascertain whether, prior to the [declaratory judgment] act, legal relief would have sufficed or, alternatively, whether special factors would warrant the intervention of equity." *Id.* (footnote omitted). For example, where a landlord sought, in a court having jurisdiction exclusively at law, to have a lease renewal declared void under the recordation statutes and to have the landlord's right to repossession recognized, the action was analogized to ejectment and, therefore, held to have been filed in the proper court. *Schultz v. Kaplan,* 189 Md. 402, 56 A.2d 17 (1947). *See also Glorius v. Watkins,* 203 Md. 546, 102 A.2d 274 (1954).

In the instant matter the declaratory judgment complaint was brought by Donald in his three representative capacities and by the other plaintiffs as beneficiaries of the Frances Trust. Their complaint was filed pursuant to CJ § 3–408(3), which authorizes use of the declaratory judgment procedure to "[d]etermine any question arising in the administration of [an] estate or trust, including questions of construction of wills and other writings." [5] The use in the instant matter of modern declaratory judgment procedure analogizes historically to equity jurisdiction over the administration of trusts and, under special circumstances, over the settlement of decedents' estates. *See Woods v. Fuller,* 61 Md. 457, 459 (1884):

> "It is very certain that the supervision of trusts is the province of a court of equity, and that an executor who has, in addition to his ordinary duties, a trust imposed on him by his testator, has always, if in doubt, the right to ask, and have the direction of a court of equity as to how he shall discharge his trust."

*See also* E. Miller, *The Construction of Wills in Maryland* § 7 (1927).

Indeed, the General Assembly has confirmed the historical relationship of equity to trusts in ET § 14–101 by providing: "A court having equity jurisdiction has general superintending power with respect to trusts. The provisions of Titles 1

---

**5.** CJ § 3–408 reads in full:

"Any person interested as or through a personal representative, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or beneficiary of a trust, in the administration of a trust, or of the estate of a decedent, a minor, disabled person, or insolvent, may have a declaration of rights or legal relations in respect to the trust or the estate of a decedent in order to:

(1) Ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;

(2) Direct the personal representative, guardian, or other fiduciary or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

(3) Determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

through 13 of this article do not affect or supersede this power."

## II

Regina's argument rests on her counterclaim. She contends that it raises issues that are triable of right to a jury, that those issues are common to issues raised by the complaint for declaratory judgment, and that, under *Higgins v. Barnes*, 310 Md. 532, 530 A.2d 724 (1987), the common issues should have been decided by a jury. The deficiency in Regina's argument is that the claims asserted in her counterclaim are also wholly equitable, as we explain below, and, therefore, are not triable to a jury. *See State v. Attman/Glazer P.B. Co.*, 323 Md. 592, 607, 594 A.2d 138, 145 (1991) (court properly struck defendant's prayer for jury trial of plaintiff's claim for specific performance of lease provision).

 Regina's standing to challenge Donald's conduct arises solely as a beneficiary of the Louis Trust. She is not a legatee under the will of Louis. The definition of "legatee" under ET § 1–101(k) considers the trustee, but not the beneficiary of an interest under a testamentary trust, to be the person receiving the legacy under the will. Further, ET § 14–204(a), part of the Maryland Revised Uniform Principal and Income Act, provides:

> "(a) An income beneficiary is entitled to income from the date specified in the trust instrument, or if none is specified, from the date an asset becomes subject to the trust. In the case of an asset becoming subject to a trust by reason of a will, it becomes subject to the trust as of the date of death of the testator even though there is an intervening period of administration of the testator's estate."[6]

---

6. During the pendency of the litigation Regina, as beneficiary of the Louis Trust, received monthly payments in an amount that Donald represents exceeded the income earned on the assets of the Louis Trust and on the segregated assets. It is unnecessary to the resolution of this appeal to trace the amount and source of those monthly payments.

Consequently, all of the claims in Regina's counterclaim are those of a beneficiary of a trust against the trustee of the trust for alleged breaches of fiduciary duty causing loss to the trust estate.

"Trusts are, and have been since they were first enforced, within the peculiar province of courts of equity." 3 A.W. Scott & W.F. Fratcher, *The Law of Trusts* § 197, at 188 (4th ed. 1988) (Scott). Like the early English courts of law, "modern courts have not permitted the beneficiary of a trust to maintain an action at law for tort against the trustee for breach of trust." *Id.* § 197.1, at 189. Consequently, "[w]here the trust estate includes chattels and the trustee deals wrongfully with them, the remedy of the beneficiary is by a suit in equity, and not by an action of trespass, trover, detinue, replevin, or case, or any other action at law." *Id.* at 190 (footnote omitted). Professor Bogert succinctly expressed the same concept when he wrote: "In other words equity has original and complete jurisdiction over trusts and will enforce the rights of a beneficiary because they arise out of a trust." G.G. Bogert & G.T. Bogert, *The Law of Trusts and Trustees* § 870, at 136 (rev.2d ed. 1995 Repl.Vol.). As stated in Restatement (Second) of Trusts § 197 (1987), the rule is that "[e]xcept as stated in § 198, the remedies of the beneficiary against the trustee are exclusively equitable." *Id.* at 433. Those exceptions, not applicable here, arise where the trustee's duty is immediately and unconditionally to pay money or to transfer a chattel to the beneficiary. *Id.* at 434.

Maryland law is to the same effect. It is clear that, prior to 1851, there was no right to a jury trial in actions by a beneficiary against the trustee for breach of fiduciary duties, other than where the exceptions, above noted, applied.

*Green v. Johnson,* 3 G. & J. 389 (1831), was an action at law by a former ward and her husband against the executrix of her deceased former guardian. The plaintiffs alleged that the

---

Any evidence describing these payments has not been included in the record extract.

guardian had appropriated her property to his own use for which the plaintiffs sought restitution, or damages under a special promise to pay. Judgment was entered on a jury verdict in favor of the plaintiffs, but this Court reversed because limitations had run. In opposition to the limitations defense the former ward argued that the guardian held the property as her trustee and that limitations presented no bar to an action against a trustee. In response to that argument this Court said:

> "But to this doctrine we cannot assent. If sitting as a Court of equity it might deserve some consideration. But in the character in which we now sit, we know of no such head of pleading as trusts. By the common law, a *cestui que trust* has no standing in Court, in *propria persona;* he can only assert his rights in a Court of Chancery. The plaintiffs, by insisting that the defendant stands to them in the relation of trustee, surrender their right of action, unless by some statutable provision they are made competent to enforce it. It is not pretended, that any such enactment exists."

*Id.* at 392–93. *See also Nelson v. Howard,* 5 Md. 327, 331 (1854) (*cestui que trust* has no standing in a court of law to sue the trustee unless there "had been an adjustment of the accounts between the parties and a promise to pay the amount ascertained to be due."); *Mattingly v. Mattingly,* 92 Md.App. 248, 250, 607 A.2d 575, 576 (1992); *Kahle v. John McDonough Builders, Inc.,* 85 Md.App. 141, 152, 582 A.2d 557, 562 (1990), *cert. denied,* 323 Md. 25, 590 A.2d 548 (1991); *Fink v. Pohlman,* 85 Md.App. 106, 120, 582 A.2d 539, 545–46 (1990); *Loyola Fed. Sav. & Loan Ass'n v. Galanes,* 33 Md.App. 559, 565–68, 365 A.2d 580, 584–85 (1976), *cert. denied,* 279 Md. 683 (1977).[7]

---

7. There are numerous cases in this Court involving actions brought by a beneficiary against a trustee which were initiated and proceeded as actions in equity without any attempt to obtain a jury trial. *See Maryland Nat'l Bank v. Cummins,* 322 Md. 570, 588 A.2d 1205 (1991); *Lopez v. Lopez,* 250 Md. 491, 243 A.2d 588 (1968); *Maryland Nat'l Bank v. Merson,* 249 Md. 353, 239 A.2d 905 (1968); *Stone v. Stone,* 230 Md.

Regina's joinder of the attorney respondents as co-defendants with the trustee in the counterclaim does not convert the claim into one triable of right before a jury. Had Regina sued the attorney defendants on the same allegations in an independent action she would not have been entitled to a jury trial. Trust beneficiaries, other than those entitled to possession of the trust property when bringing possessory actions, "cannot maintain an action at law against a third person who commits a tort or other wrong with respect to the trust property." Scott, § 281, at 21.

In *Safe Deposit & Trust Co. v. Cahn*, 102 Md. 530, 62 A. 819 (1906), this Court rejected the contention that an action at law should have been brought against third parties for participation in the trustee's breach of trust. There, a testator's son and widow were co-trustees of a testamentary trust that held stock in various corporations. From time to time the son sold shares of trust stock through a firm of stockbrokers. Although the brokers knew that the stock was held in trust, the proceeds of sale were deposited to the son's account. The son absconded with the sale proceeds to some unknown place. *Id.* at 532–34, 62 A. at 820–21. A successor trustee sued the stockbrokers in equity, but the trial court dismissed the complaint for lack of equity jurisdiction. On the successor trustee's appeal the stockbrokers contended that the claim against them was for damages based on negligence, for which there was an adequate remedy at law, so that no action would lie in equity.

This Court held:

"The participants in the defalcation—the persons who aid, and by their conduct knowingly assist the trustee to squander the trust funds—are chargeable with the loss, because, as stated by SIR JOHN LEACH, Master of the Rolls, 'in the consideration of a Court of equity, they, by being parties to a breach of trust, have themselves become trustees for the purposes of the testator's will.'"

---

248, 186 A.2d 590 (1962); *Ridgely v. Pfingstag*, 188 Md. 209, 50 A.2d 578 (1946); *Mangels v. Tippett*, 167 Md. 290, 173 A. 191 (1934).

*Id.* at 537, 62 A. at 822 (citing *Wilson v. Moore,* 1 Myl. & Keene 337, 39 Eng. Rep. 709 (1834)). *See also All v. McComas,* 162 Md. 690, 161 A. 187 (1932); *Duckett v. National Bank of Baltimore,* 88 Md. 8, 41 A. 161 (1898); *Duckett v. National Mechanics' Bank,* 86 Md. 400, 38 A. 983 (1897); *Swift v. Williams,* 68 Md. 236, 11 A. 835 (1888); *Stewart v. Firemen's Ins. Co.,* 53 Md. 564 (1880); *Strauss v. United States Fidelity & Guar. Co.,* 63 F.2d 174 (4th Cir.), *cert. denied,* 289 U.S. 747, 53 S.Ct. 690, 77 L.Ed. 1492–93 (1933). Accordingly, under present Maryland law Regina was not entitled to a jury trial.

## III

Regina urges that this Court substantially alter existing Maryland law by declaring that a breach of any fiduciary duty constitutes a tort in the sense that it would be actionable at law, triable to a jury, and, in appropriate cases, capable of supporting punitive damages.

In *Adams v. Coates,* 331 Md. 1, 12, 626 A.2d 36, 41 (1993), where we rejected entitlement to punitive damages on the facts presented, we assumed, solely for the purpose of discussion, that a tort action would lie to redress conduct that was traditionally remedied by an action for accounting upon the dissolution of a partnership. We similarly assumed, only for purposes of discussion, the existence of such a generic tort in *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 340 Md. 176, 191–92, 665 A.2d 1038, 1045–46 (1995).

## A

Regina relies heavily on Restatement (Second) of Torts § 874 (1977), headed, "Violation of Fiduciary Duty," and reading as follows:

"One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation."

A substantially similar § 874 was included in the Restatement of Torts approved and adopted by the American Law Institute

in 1934. The inclusion of a "Violation of Fiduciary Duty" section in the Restatement (Second) of Torts does not mean that an action "at law," under the former law/equity dichotomy, is always available for any violation of a duty recognized as "fiduciary." Section 874 does not mean that the American Law Institute recognizes that any breach of fiduciary duty is triable to a jury.

Comment b to § 874 advises as follows:

"The local rules of procedure, the type of relation between the parties and the intricacy of the transaction involved, determine whether the beneficiary is entitled to redress at law or in equity. The remedy of a beneficiary against a defaulting or negligent trustee is ordinarily in equity; the remedy of a principal against an agent is ordinarily at law."

Comment b further states that "the beneficiary is entitled to tort damages ... in accordance with the rules stated in §§ 901–932." Restatement (Second) of Torts § 902 defines "damages" to mean "a sum of money awarded to a person injured by the tort of another." Comment a to that section states that

"[t]he word 'damages' is used in this Restatement in the same sense in which it is used in the Restatement of Contracts. It has reference to an award made to a person by a competent judicial tribunal in a proceeding at law or in equity because of a legal wrong done to him by another."

Comment b to Restatement (Second) of Torts § 874 also refers to Restatement (Second) of Trusts §§ 197 through 226A as "[s]pecial application[s]" of the rules in Torts § 874. As noted, *supra,* Restatement (Second) of Trusts § 197 states that, with limited exceptions, "the remedies of the beneficiary against the trustee are exclusively equitable."

Thus, the Restatement simply refers us back to Maryland procedure which, as set forth in Parts I and II, *supra,* does not recognize that Regina's claim is triable to a jury.

B

Regina also relies upon *Hartlove v. Maryland School for the Blind,* 111 Md.App. 310, 681 A.2d 584 (1996), decided by the Court of Special Appeals after its unreported opinion in the instant matter. *Hartlove* was a residuary legatee's action against the personal representative of a decedent's estate. The legatee alleged that certain bank accounts, held jointly by the decedent and the individual whom she named as personal representative, were the sole property of the decedent so that the funds on deposit, totalling approximately $176,000, should have passed to the residuary legatee through the probate estate and not to the personal representative, individually, by survivorship. *Id.* at 317–25, 681 A.2d at 587–90. The action was tried before a jury to which the trial court submitted four counts, breach of fiduciary duty by the defendant as personal representative, two conversion counts, and unjust enrichment. *Id.* at 325, 681 A.2d at 591. The jury found for the defendant on the latter three counts, for the plaintiff on breach of fiduciary duty, and awarded $25,000 in compensatory damages. *Id.* Both parties appealed.

The Court of Special Appeals quoted A.J. Gibber, *Gibber on Estate Administration* at 3–1 (3d ed.1991), on the standard of care required of a fiduciary. According to Gibber, it includes:

" '1. The exercise of the care, skill and diligence of a reasonably prudent person dealing with his or her own property;

" '2. The exercise of good faith and loyalty to all the beneficiaries;

" '3. The lack of self-dealing;

" '4. The exercise of reasonable watchfulness over investments; and

" '5. The maintenance of full, accurate and precise records.' "

*Hartlove,* 111 Md.App. at 331, 681 A.2d at 593.

With respect to the breach of fiduciary duty claim against the personal representative, the court made three holdings.

First, it said: "Given the standard of conduct imposed upon fiduciaries, we are of the view that fiduciaries who breach their duty should be held accountable under an independent cause of action aimed at such conduct." *Id.* (footnote omitted). The panel of the Court of Special Appeals divided two to one on this first holding. Second, the court held that the personal representative had not preserved his contention that the trial court erred in submitting the breach of fiduciary duty claim to the jury. *Id.* at 335, 681 A.2d at 595. Third, the court held that "even if the issue is equitable in nature, the submission of the claim to the jury does not amount to a 'jurisdictional' defect, so as to allow Hartlove to raise the issue for the first time on appeal." *Id.* at 339, 681 A.2d at 598. Thus, *Hartlove* made no holding as to whether the claim of breach of fiduciary duty alleged there was triable of right to a jury.

*Hartlove*, however, did cite one case involving the claim by the beneficiary of a testamentary trust against the trustee, *InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882 (Tex. App.1987). *Hartlove*, 111 Md.App. at 332, 681 A.2d at 594. The Texas case was tried before a jury. The beneficiary claimed that the trustee had sold at too low a price 968.5 shares, representing 32.28% of the 3,000 outstanding shares, of a closely-held corporation that manufactured gasoline pumps. The testator had died in 1974, and in the probate account approved in August 1980 the stock was valued at $185 per share. Four months later the bank-trustee sold the shares to the issuing corporation at $512.26 per share, based on the trustee's in-house appraisal. *Id.* at 887. At trial experts for the defendant valued the stock at the time of sale from a low of $200 per share to a range of $500 to $550 per share. *Id.* at 889. An expert for the plaintiff valued the stock at $3,996.08 per share. *Id.* at 894. The jury returned a verdict that valued the stock at $1,548.79 per share, resulting in compensatory damages of $1 million for the block. To this the jury added $10 million in punitive damages. *Id.* at 887, 890.

On appeal the compensatory damages were affirmed, and the appellate court ordered a remittitur that would reduce the

punitive damages to $2,678,750. *Id.* at 909. The three judge panel produced three opinions. The second judge in the majority wrote separately to explain the reduction in punitive damages. They were reduced because the bank's conduct

"did not involve criminal or even malicious acts, nor did it produce any direct benefit to the bank at appellees' expense.... The evidence of bad faith and self-dealing [was] tenuous at best.... There was no mental or physical abuse, personal outrage, insult or opprobrious conduct calculated to injure appellees' sensibilities. Indeed, there [was] considerable evidence that the bank tried to act according to good business practice."

*Id.* at 910. The third judge, dissenting, argued that there was no independent tort and no basis for punitive damages. *Id.* at 911–12. That judge believed that the majority had done "no more than pay lip service to Learned Hand's belief, '[t]he law ought not make trusteeship so hazardous that responsible individuals and corporations will shy away from it.'" *Id.* at 914 (quoting *Dabney v. Chase Nat'l Bank*, 196 F.2d 668, 675 (2d Cir.1952)).

## C

Regina and the Court of Special Appeals read too much into § 874 of the Restatement. As we saw in Part III.A, § 874 in effect recognizes the universal proposition that a breach of fiduciary duty is a civil wrong, but the remedy is not the same for any breach by every type of fiduciary. For some breaches the remedy may be at law, for others it may be exclusively in equity, and for still others there may be concurrent remedies.

Nor do we discern any abandonment by courts in other states of equity's exclusive jurisdiction over claims of beneficiaries against trustees. Recent decisions in other states have adhered to established trust law, as set forth in Part II, *supra*, when the courts had been asked to approve jury trials for claims by beneficiaries against trustees of express trusts. *See Ex parte Holt*, 599 So.2d 12 (Ala.1992); *Carstens v. Central Nat'l Bank & Trust Co.*, 461 N.W.2d 331 (Iowa 1990); *Usel-*

*man v. Uselman,* 464 N.W.2d 130 (Minn.1990); *Magill v. Dutchess Bank & Trust Co.,* 150 A.D.2d 531, 541 N.Y.S.2d 437 (1989). Nothing in *InterFirst Bank Dallas, supra,* persuades us to break ranks with the courts and commentators that continue to recognize the long established principles of trust law.

In addition to seeking the transfer of fact-finding responsibility from court to jury, Regina also seeks to enlarge the damages liability of trustees. The equitable remedies of a trust beneficiary, according to Restatement (Second) of Trusts § 199, are:

"(a) to compel the trustee to perform his duties as trustee;

"(b) to enjoin the trustee from committing a breach of trust;

"(c) to compel the trustee to redress a breach of trust;

"(d) to appoint a receiver to take possession of the trust property and administer the trust;

"(e) to remove the trustee."

Under the tort that Regina seeks, if Donald breached the trust, he would be liable for damages for "stress, mental anguish and exacerbation of various physical ailments and conditions directly resulting from Donald's actions." Brief of Appellant at 17–18. It is not at all clear that Regina would limit damages for emotional distress to cases in which the trustee has caused some economic loss to the beneficiary. Given the fact that Regina does not challenge for lack of evidence the trial court's finding that Louis misappropriated assets of the Frances Trust, Regina's arguments strongly suggest that she seeks emotional distress damages if Donald made any misstep, even if it did not cause loss. Regina's quest for this new tort liability of trustees is particularly unpersuasive when one considers that there may be instances in which a trustee may commit a breach of trust mistakenly and nonnegligently. *See* Restatement (Second) of Trusts § 201 cmt. a.

Regina's requested tort would also carry the potential for punitive damages. But punitive damages are not at all available in equity. *Superior Constr. Co. v. Elmo*, 204 Md. 1, 14, 26, 104 A.2d 581, 582, 587–88 (1954). Further, in cases of serious, but not necessarily criminal, breaches of trust, the equity court has power to surcharge the trustee by reducing trustee's commissions. *Maryland Nat'l Bank v. Cummins*, 322 Md. 570, 600–01, 588 A.2d 1205, 1219–20 (1991).

In overview, Regina asks this Court to make a very far reaching change in Maryland law by creating a tort that will apply to *all fiduciaries*. Neither Regina nor the Court of Special Appeals in *Hartlove* has undertaken to review all of the relationships to which the new tort would apply. There has been no analysis of whether, as to any given fiduciary relationship, the tort would duplicate existing remedies at law or would eliminate, as in the case of trustees, the nearly complete exclusivity of equitable jurisdiction. There has been no analysis of the effect of the new tort on the probate area. Further, recognition of the new tort would make trustees, and any other fiduciaries whose breaches are currently primarily remediable in equity, subject to potential liability for punitive damages.

The instant matter differs radically from a number of this Court's decisions in which new causes of action have been recognized. By way of illustration, and not limitation, we have recognized a new cause of action when there was no existing legal remedy directed at the problem, *see Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981) (abusive discharge); *Harris v. Jones*, 281 Md. 560, 380 A.2d 611 (1977) (intentional infliction of emotional distress); *State Farm Mut. Auto. Ins. Co. v. White*, 248 Md. 324, 236 A.2d 269 (1967) (negligent failure to settle); *Carr v. Watkins*, 227 Md. 578, 177 A.2d 841 (1962) (the various invasions of privacy), and when, in light of a new social problem, the existing remedies were inadequate, *see Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976) (strict liability in tort). In the instant matter we have not been presented with, nor are we aware of, any lack of adequacy of the existing remedies for breach of a

trustee's duties. There is, in our view, no justification for the wholesale changes in Maryland law that Regina advocates. Indeed, so enduring has been the marriage between trusts and equity in this State that adoption of Regina's contentions would violate the spirit, if not the letter, of ET § 14–101 ("A court having equity jurisdiction has general superintending power with respect to trusts.").

Accordingly, we hold that there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries. This does not mean that there is no claim or cause of action available for breach of fiduciary duty. Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion. Counsel are required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem. Whether the cause or causes of action selected carry the right to a jury trial will have to be determined by an historical analysis. Counsel do not have available for use in any and all cases a unisex action, triable to a jury. This Court would not preside over the death of contract by recognizing as a tort a breach of contract that was found to be in bad faith. *See K & K Management, Inc. v. Lee,* 316 Md. 137, 169, 557 A.2d 965, 980–81 (1989); *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.,* 336 Md. 635, 654, 650 A.2d 260, 269–70 (1994) ("[T]his Court has refused to adopt any theory of tortious interference with contract or with economic relations" that transforms a breach of contract claim into an intentional tort.). Nor shall we preside over the death of equity by adopting Regina's contentions.

To the extent that *Hartlove v. Maryland School for the Blind,* 111 Md.App. 310, 681 A.2d 584 (1996), is contrary to the views expressed in this opinion, *Hartlove* is disapproved.

IV

Regina alternatively contends that, if she were not entitled to a jury trial on her counterclaim, the circuit court neverthe-

less erred as a matter of law in concluding that Donald had not committed a breach of trust. In this alternative argument Regina analyzes the transaction to be the presentation by Donald, as trustee of the Frances Trust, of a claim to Donald, as personal representative of Louis's estate. Regina argues that the claim was "forever barred" by the time limits of ET § 8–103(a) and that Donald, as trustee of the Louis Trust, was required to oppose on that basis transfer of the segregated funds to an account in the name of the Frances Trust.[8]

ET § 8–103(a) (1996 Cum.Supp.) provides in relevant part:

"[A]ll claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates:

"(1) 6 months after the date of the decedent's death; or

"(2) Two months after the personal representative mails or otherwise delivers to the creditor a copy of a notice in the form required by § 7–103 of this article or other written notice, notifying the creditor that his claim will be barred unless he presents the claim within 2 months from the mailing or other delivery of the notice."

In ET § 8–103 the "time proviso is part of the right and not merely a limitation of the remedy." *Chandlee v. Shockley*, 219 Md. 493, 498, 150 A.2d 438, 441 (1959). *Shockley*, which dealt with a predecessor statute to ET § 8–103, held that a personal representative against whom a claim is asserted "may waive or

---

8. We note that Donald served as personal representative of Louis's estate and as trustee of the Louis Trust by virtue of appointment by his father. *Compare Goldman v. Rubin*, 292 Md. 693, 441 A.2d 713 (1982) (where divided loyalty in a transaction necessarily results from the provisions of the testator's will, the conflict is not *per se* a breach of trust). It is because of these conflicts that Donald held the segregated assets in abeyance, for possible return to the Louis Trust unless and until the equity court approved a completed transfer to the Frances Trust.

be estopped to rely on the time limit of the statute." *Id.* at 502, 150 A.2d at 443. The current statute was recommended by the Henderson Commission and enacted as former Article 93, § 8–103. The explanations of the Henderson Commission were published as comments to the various sections of former Article 93, and the comments to § 8–103 may be found following § 8–103 in Md.Code (1974), Estates and Trusts Article. The comment to § 8–103 advises that "[t]he Commission did not intend to cause a change in the rule of *Chandlee v. Shockley,* ... which held that the personal representative may unintentionally waive, or be estopped to assert, limitations under the particular circumstances of that case." *Shockley* involved a motor tort claim against the decedent whose personal representative could be found estopped from raising the bar of the statute because a representative of the estate allegedly had assured the claimant's attorney that it was unnecessary to file suit, that liability was not contested, and that the matter would be settled once the extent of the damages was known. *Id.* at 495, 150 A.2d at 439. *See also Lampton v. LaHood,* 94 Md.App. 461, 474–75, 617 A.2d 1142, 1149 (1993).

■ The applicability of the *Shockley* rule to the case before us is better demonstrated by considering whether the statute would bar the claim if the fiduciaries of the Frances Trust and of Louis's estate were separate individuals. Under that scenario, shortly after Louis's death, his personal representative discovers that Louis had sold for his personal account a U.S. Treasury Bond belonging to the Frances Trust, and the personal representative arranges for the appointment of someone else as successor trustee of the Frances Trust. That trustee is fully advised of the discovery. There follows a continuing investigation of Louis's personal and trustee records, either by the successor trustee with the active cooperation of the personal representative, or by the personal representative, who keeps the trustee fully advised. The purpose of the investigation is to make the matter right. Under that hypothetical, the personal representative would have waived, or been estopped from, asserting the bar of § 8–103. That

result is not altered because Donald occupied both positions, so long as he acted without breach of trust, as the circuit court found in the exercise of exclusive equity jurisdiction.

Accordingly, there was no error of law in the declaratory judgment entered by the circuit court.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.**