UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ATKINSON WAREHOUSE AND
DISTRIBUTION, INCORPORATED,
    *Plaintiff-Appellee,*

  v.

ECOLAB, INCORPORATED,
    *Defendant-Appellant.*

No. 00-2206

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-99-106-H)

Argued: May 8, 2001

Decided: August 9, 2001

Before MICHAEL and GREGORY, Circuit Judges, and
Arthur L. ALARCON, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Robert Martin Buell, BOWMAN & BROOKE, L.L.P.,
Richmond, Virginia, for Appellant. Arnold Steven Albert, ALBERT
& SCHULWOLF, L.L.C., Washington, D.C., for Appellee. **ON
BRIEF:** Coles M. Warren, BOWMAN & BROOKE, L.L.P., Rich-

mond, Virginia; Richard G. Morgan, Ryan L. Nilsen, BOWMAN & BROOKE, L.L.P., Minneapolis, Minnesota, for Appellant. Andrew B. Schulwolf, ALBERT & SCHULWOLF, L.L.C., Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Ecolab, Inc. ("Ecolab") appeals the denial of its motion for judgment as a matter of law following a jury verdict awarding Atkinson Warehousing and Distribution, Inc. ("AWD") $275,000 in damages for breach of a contract to provide warehousing and delivery services. The jury ostensibly calculated damages as profits AWD lost during a two-year period. Ecolab contends that a reasonable jury could only conclude that the contract was terminable without cause on sixty days notice, and that AWD was therefore precluded under Maryland law from recovering damages incurred after the sixty-day period immediately following the breach. Concluding that the jury could reasonably have found that the parties agreed upon a contract with a firm two-year term, we affirm.

### I.

Ecolab utilizes the services of B.E.P., Inc. ("BEP") to store and distribute its cleaning products. After Ecolab acquired a new line of products in late 1997, an Ecolab executive named Jack Schafers ("Schafers") contacted William Atkinson ("Mr. Atkinson"), a longtime BEP warehouse manager, to inquire whether BEP could accommodate Ecolab at the existing warehouse where BEP stored Ecolab's products. Mr. Atkinson indicated that BEP could not.

In April of 1998, Mr. Atkinson told Schafers that he was consider-

ing renting a warehouse in Maryland that could store all of Ecolab's inventory, including its new products. In a July 15, 1998 letter, Mr. Atkinson outlined a proposal indicating that BEP's drivers, all of whom were independent contractors, would work at his new facility should a deal be finalized. At around this time, Schafers sent to Mr. Atkinson a standard form "warehousing and service agreement" which expressly permitted either party to terminate the contract without cause upon sixty days written notice.[1]

Sometime after BEP executives learned of Mr. Atkinson's plans, they terminated his employment and attempted to retain Ecolab's business. Mr. Atkinson thereupon entered into more extensive discussions with Ecolab. Both Mr. Atkinson and Mary Atkinson ("Mrs. Atkinson"), AWD's Vice President, testified that the term of the agreement was a critical issue throughout the negotiations. More specifically, they claimed that Ecolab understood that AWD was unwilling to assume substantial financial commitments, including the signing of a lease, without a firm commitment from Ecolab.

Mr. and Mrs. Atkinson each further testified that in discussing the term of the agreement, Schafers indicated that Ecolab could only consider committing to a term of two to three years. At trial, AWD introduced an Ecolab "decision tree," describing AWD's willingness to enter into a "two to three year agreement" as a favorable element of a potential agreement, as additional evidence of Ecolab's knowledge that a term of years was an essential provision. In accordance with the parties' discussions, Mrs. Atkinson crossed out the sixty-day provision in the standard form agreement, inserted a three-year term in its place, signed the document on AWD's behalf, and returned it to Ecolab.[2]

In late October, David Macrae ("Macrae"), another BEP executive, informed Mr. Atkinson of Ecolab's final decision to contract with

---

[1]A blank version of the standard form agreement provides: "The terms of this agreement will commence on _____ and shall continue in effect until this Agreement is terminated by either party giving no less than sixty (60) days prior written noticed [sic] unless otherwise provided herein." (J.A. at 601.)

[2]Ecolab, however, never executed this version of the standard form agreement.

AWD. Macrae asked Mr. Atkinson to sign a lease, purchase necessary equipment, and handle other essential details. Mr. Atkinson testified that Macrae at that time stated that Ecolab could offer, at most, a two-year term. Mr. Atkinson, for his part, informed Macrae that he was uncomfortable moving forward without a written commitment.

On October 27, 1998, Macrae sent to Mr. Atkinson a letter (the "October 27 letter") certifying that Ecolab had elected to utilize AWD's services. The October 27 letter further stated that Ecolab could "offer no more than a two year commitment to operate" out of AWD's facility. (J.A. at 598.) The letter also requested that Mr. Atkinson meet with Macrae "to plan the transition . . . and take care of all related paperwork." *Id.*

At the parties' November 3, 1998 meeting, Macrae placed the October 27 letter and a new copy of the standard form agreement side-by-side. Mr. Atkinson and Macrae then resolved outstanding deal points and memorialized them on the October 27 letter. After recording these contractual terms on the October 27 letter, the parties signed the new copy of the standard form agreement (the "form agreement"). Although the form agreement is now missing, it is undisputed that the parties properly executed it without altering the sixty-day provision.

After the meeting, Macrae informed BEP's owner, Michael Nash ("Nash"), of Ecolab's intent to vacate the BEP warehouse. In response, Nash presented a letter signed by some of the BEP drivers stating their intent to continue working for BEP. In addition, Nash offered Ecolab a twenty-five percent discount to stay with BEP. On November 5, 1998, Macrae gave Atkinson oral notice that Ecolab would continue to utilize BEP's services.

After AWD filed suit for breach of contract in a Maryland state court, Ecolab removed the action on diversity grounds to the United States District Court for the District of Maryland. On multiple occasions, Ecolab moved the court below to rule as a matter of law that AWD could not recover damages sustained beyond the sixty-day period immediately following any breach of the contract. The district court denied each of these motions, concluding that the issue of whether the contract was terminable on sixty days notice was an issue of fact for the jury to consider. *See*, *e.g.*, *Atkinson Warehousing &*

*Distribution, Inc. v. Ecolab, Inc.*, 99 F.Supp.2d 665, 670-71 (D. Md. 2000) (denying Ecolab's motion in limine).

On June 23, 2000, the jury returned a $275,000 verdict. On August 16, 2000, the district court denied Ecolab's motion for judgment as a matter of law under Fed. R. Civ. P. 50(b).[3] The court concluded that the jury could reasonably have based its damages award either on a finding that the agreement contained a firm two-year term, or that while the contract was terminable upon sixty days notice, Ecolab had failed to give proper notice. *See Atkinson Warehousing & Distribution, Inc. v. Ecolab, Inc.*, 115 F.Supp.2d 544, 546-47 (D. Md. 2000). The court ultimately found, however, that the $275,000 award necessarily indicated that the jury had concluded that the parties' two-year agreement was not terminable without cause. *See id.* at 548-49. Ecolab now appeals.

## II.

Under Fed. R. Civ. P. 50(b), a district court may grant a motion for judgment as a matter of law "if there is no legally sufficient evidentiary basis for a reasonable jury to find for the [non-moving] party." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). We will affirm a denial of such a motion if, "giving [the non-movant] the benefit of every legitimate inference in his favor, there was evidence upon which a jury could reasonably return a verdict for him." *Id.* (quoting *Abasiekong v. City of Shelby*, 744 F.2d 1055, 1059 (4th Cir. 1984)). We now turn to a brief discussion of the merits of Ecolab's appeal.

## III.

Ecolab argues that a reasonable jury could only find that the agreement between the parties was terminable without cause on sixty days notice, and that AWD's damages are therefore limited as a matter of law to those incurred within the sixty-day period immediately following the breach. As we have previously stated in the summary judg-

---

[3]The court also denied Ecolab's alternative motion for a new trial under Rule 59, concluding that the jury instructions had not unfairly prejudiced Ecolab's case.

ment context, "[o]nly an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if 'susceptible of two reasonable interpretations.'" *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir. 1992) (citing *Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965)).[4] In determining whether an agreement is ambiguous, we consider particular provisions in the context of the entire agreement. *Atalla v. Abdul-Baki*, 976 F.2d 189, 192 (4th Cir. 1992).

Here, the parties agree that the October 27 letter and the form agreement together constitute the operative agreement. It is also undisputed that the parties signed the form agreement without altering the sixty-day provision. In addition, the parties do not dispute that the portion of the sixty-day provision specifying that the agreement is terminable upon sixty days notice "unless otherwise provided herein" refers to contractual terms contained in both the form agreement and the October 27 letter.

AWD simply argues that the "two year commitment" contained in the October 27 letter modifies and renders inoperative the sixty-day provision in the form agreement. Notwithstanding the inclusion of the sixty-day provision, in AWD's view, the contract is not terminable upon sixty days notice because the agreement "otherwise provides" for a firm two-year term.

Ecolab, on the other hand, argues that the inclusion of the sixty-day provision clearly indicates that the parties intended that the contract be terminable without cause upon sixty days notice. Ecolab essentially maintains that the parties intended to enter into a two-year contract that was terminable at an earlier date upon notice. Thus, according to Ecolab, there is no conflict between the two-year "duration" provision and the sixty-day termination provision. Moreover, Ecolab contends, in the context of this case, the "unless otherwise provided herein" language refers to the remaining termination provi-

---

[4]Although *World-Wide Rights* was decided in the summary judgment context, its contractual interpretation methodology is fully applicable here. In each case, the issue is whether the court may interpret particular contractual provisions as a matter of law.

sions contained in the form agreement itself,[5] rather than to the "two year commitment" referenced in the October 27 letter.

Reading the entire agreement in context, we find each interpretation to be reasonable. While the inclusion of the sixty-day provision tends to support Ecolab's view, a reasonable jury could find that this provision conflicts with the "two year commitment." The "unless otherwise provided herein" language could likewise refer either to the "two year commitment" or to the remaining termination provisions contained in the form agreement. We therefore conclude that the agreement is ambiguous as to the question of whether it is terminable without cause upon sixty days notice.

As noted above, we resort to extrinsic evidence where the writings at issue are "susceptible of two reasonable interpretations." *World-Wide Rights*, 955 F.2d at 245. Viewing the extrinsic evidence in the light most favorable to AWD, it is clear that a reasonable jury could conclude that the contract contained a two-year term and was not terminable without cause. To begin, Mr. Atkinson specifically informed Schafers of the need for a firm commitment, and Schafers responded by offering a two- to three-year term. Ecolab's internal "decision tree" indicates that Ecolab not only understood AWD's position, but viewed it as a positive element of a potential deal.

Following the parties' initial exchanges, Mrs. Atkinson struck the sixty-day provision from the first standard form agreement and inserted a three-year term before sending it to Ecolab. Shortly before the parties consummated their agreement, Macrae indicated that Ecolab could offer, at most, a two-year term. Within a matter of days, Macrae followed up with the October 27 letter, which speaks of a "two year commitment." Moreover, Mr. Atkinson testified that while he was aware of the sixty-day provision, he nevertheless signed the form agreement because he "already had a two year commitment in the October 27[ ] [letter]." (J.A. at 293.)

---

[5]For example, the form agreement provides for immediate termination if AWD files for bankruptcy. The form agreement also provides for termination upon ten days written notice in other specified circumstances.

The foregoing evidence strongly suggests that the parties intended to form a two-year contract not terminable without cause. Although on these facts it may also be reasonable to conclude that the parties' agreement was terminable upon sixty days notice, it is clear that there was sufficient evidence on which the jury could reasonably have concluded that the parties intended to form an agreement that could not be terminated without cause for a two-year period.[6] For this reason, the district court's denial of Ecolab's motion for judgment as a matter of law is hereby affirmed.[7]

*AFFIRMED*

---

[6]In light of this conclusion, it is unnecessary to reach the question of whether, upon the breach of a contract terminable without cause upon notice, lost profits damages under Maryland law are limited to those incurred during a period equivalent to the notice period.

[7]It appears that Ecolab does not appeal the district court's denial of a new trial under Rule 59. To the extent, however, that Ecolab appeals that denial, we also conclude that the district court did not abuse its discretion in doing so. *See Cline*, 144 F.3d at 301 ("The decision to grant or deny a new trial is within the sound discretion of the district court, and we respect that determination absent an abuse of discretion.").