BEP, INC. Plaintiff

v.

William T. ATKINSON, Mary P. Atkinson and Atkinson Warehousing and Distribution, Inc. Defendants

No. H–01–1353.

United States District Court, D. Maryland.

Dec. 10, 2001.

H. Jeffrey Tabb, Law Office, Greenbelt, MD, for Plaintiff.

Andrew Blake Schulwolf, Arnold S. Albert, Law Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HARVEY, Senior District Judge.

The dispute between the parties in this case arises as a result of events which led to earlier litigation in this Court. In *Atkinson Warehousing and Distribution, Inc. v. Ecolab, Inc.*, 115 F.Supp.2d 544 (D.Md.2000), the plaintiff sought a recovery for breach of contract. Following extensive pretrial proceedings, the case came on for trial before a jury commencing on June 19, 2000. Following a five day trial, the jury determined that defendant Ecolab, Inc. ("Ecolab") had committed a material breach of contract and awarded damages to plaintiff in the amount of $275,000. That judgment was affirmed by the Fourth Circuit. *Atkinson Warehouse and Distribution, Inc. v. Ecolab, Inc.*, 2001 WL 896573, 15 Fed.Appx. 160 (4th Cir.2001).

In the pending action, BEP, Inc. ("BEP") has sued William T. Atkinson ("Atkinson" or "William Atkinson"), his wife Mary P. Atkinson ("Mary Atkinson"), and Atkinson Warehousing and Distribution, Inc. ("AWD"), the successful plaintiff in the earlier suit. This civil action was originally instituted in the Circuit Court for Anne Arundel County and was subsequently removed by defendants to this Court pursuant to 28 U.S.C. § 1441(a) on the ground that diversity of citizenship exists under § 1332(a). Count I of the complaint seeks a recovery from defendant William Atkinson for breach of fiduciary duty. Count II asserts a claim of civil conspiracy against all three defendants. Plaintiff seeks both compensatory and punitive damages.

Pursuant to a Scheduling Order entered by the Court, the parties have engaged in discovery. Presently pending are a motion for partial summary judgment filed by plaintiff BEP and a motion for summary judgment filed by the defendants. The parties have submitted memoranda and exhibits in support of and in opposition to the pending motions, including excerpts from depositions taken during discovery. A hearing on the pending motions has been held in open court.

For the reasons stated herein, plaintiff's motion for partial summary judgment will be granted in part and denied in part, and defendants' motion for summary judgment will be granted in part and denied in part. Judgment in the amount of $22,496.46 plus costs will be entered under Count I in favor of plaintiff BEP against defendant William Atkinson. Defendants' motion for summary judgment will be granted as to Count II and as to plaintiff's claim for punitive damages.

## I

### Background Facts

Plaintiff BEP is a corporation engaged in the business of providing warehousing and distribution services. The President and owner of the corporation is Michael Nash ("Nash"), who also owns a warehouse located in Washington, D.C. A long time employee of BEP,[1] defendant William Atkinson was warehouse manager in 1998. His wife, Mary Atkinson, was a part time employee.

Ecolab, Inc. ("Ecolab") is a manufacturer and seller of cleaning and sanitation products. For approximately forty years, Ecolab has utilized the warehousing and distribution services of BEP.

After Ecolab acquired a new line of products in late 1997, Jack Schafers ("Schafers"),[2] one of its executives, contacted Atkinson and inquired whether BEP could accommodate the new inventory at the existing warehousing where BEP had been storing Ecolab's products. Atkinson stated that BEP could not.

In April of 1998, Atkinson contacted Schafers and told him that he was considering renting a larger warehouse in Maryland which could store all of Ecolab's inventory, including the new line of products. In a letter to Ecolab dated July 15, 1998, Atkinson outlined a proposal for the warehousing of all of Ecolab's inventory. This letter, *inter alia*, contained assurances that BEP's warehouse and clerical staff would be moving to the new facility should a deal be finalized and stated that BEP drivers would be used by Atkinson at the new facility. When Nash later learned that Atkinson had been negotiating with representatives of Ecolab in an effort to secure its business, Atkinson was fired on September 4, 1998. Thereafter, negotiations continued between Atkinson and David Macrae ("Macrae"), another Ecolab employee.[3] On October 27, 1998, AWD was formally incorporated. That same date, Macrae sent Atkinson a letter indicating that Ecolab had elected to utilize AWD for its warehousing and distribution needs which had previously been provided by BEP.

On November 3, 1998, a warehousing and service agreement was executed by Atkinson and Macrae. Thereafter, Macrae informed Nash of Ecolab's intent to vacate

---

**1.** Atkinson had been an employee of BEP and its predecessors for some 20 years.

**2.** Schafers was Director of Ecolab's North American Distribution division.

**3.** Macrae at the time was distribution manager of Ecolab.

the BEP warehouse. In an effort to retain Ecolab's business, Nash offered Ecolab a 25% discount on warehousing and distribution charges if it stayed with BEP. Ecolab thereupon decided to remain with BEP, accepted Nash's offer, and gave Atkinson oral notice that Ecolab would continue to operate out of BEP's warehouse.

In the earlier action brought by it in this Court, AWD claimed that Ecolab had breached a contract between the parties whereby AWD had agreed to provide Ecolab with warehousing and distribution services for a period of two years. Following the trial, the jury determined that Ecolab had breached the contract between the parties and awarded damages to plaintiff AWD in the amount of $275,000.

## II

### The Pending Motions

In its motion for partial summary judgment, plaintiff BEP here asks this Court to grant judgment in its favor in the amount of $22,496.46. Plaintiff further requests that its claim for punitive damages under both Count I and Count II be submitted to a jury at a trial. Plaintiff maintains that defendant Atkinson breached the fiduciary duty owed by him to BEP as his employer and that to retain Ecolab's business, BEP was required to grant Ecolab a 25% discount for storage for one year, resulting in a loss to BEP of $22,496.46. Plaintiff BEP further maintains that defendants Mary Atkinson and AWD aided and abetted Atkinson in his breach of fiduciary duty and that BEP is entitled to recover damages from all three of these defendants under a theory of civil conspiracy.

Defendants have moved for summary judgment on both counts. According to defendants, Atkinson's conduct did not amount under Maryland law to a breach of fiduciary duty. Although they have not challenged plaintiff's $22,496.46 figure, defendants contend that plaintiff is not entitled to recover any lost profits because of payroll savings which resulted from the termination of Atkinson's employment. Defendants further maintain that plaintiff BEP is not entitled to a recovery from defendants under a theory of civil conspiracy and also that plaintiff is not entitled to an award of punitive damages in this case under Maryland law.

## III

### Summary Judgment Principles

It is well established that a party moving for summary judgment or partial summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment or partial summary judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). The movant's burden may be met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.* The burden is on the moving party at the summary judgment stage to show that there is an absence of evidence to support the non-moving party's position. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985), when the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must

be evidence on which a jury might rely.'" *Barwick*, 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation...to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that plaintiff's motion for partial summary judgment must be granted in part and denied in part and that defendants' motion for summary judgment must be granted in part and denied in part. Judgment in the amount of $22,496.46 will be entered in favor of plaintiff BEP on Count I. Defendant is entitled to summary judgment both on Count II and on plaintiff's claim for punitive damages.

## IV

### Discussion

#### (a)

#### Breach of Fiduciary Duty

The parties here dispute whether there exists in Maryland a cause of action for breach of fiduciary duty. Maryland's appellate courts, and on occasion this Court, have not been consistent in ruling on this question in cases involving various different factual scenarios. *See Hartlove v. Maryland School for the Blind*, 111 Md.App. 310, 332–33, 681 A.2d 584 (1996); *Kann v. Kann*, 344 Md. 689, 690 A.2d 509 (1997); *Bresnahan v. Bresnahan*, 115 Md.App. 226, 235, 693 A.2d 1 (1997); *Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787, 803 (D.Md.1998); *Froelich v. Erickson*, 96 F.Supp.2d 507, 526 n. 22 (D.Md.2000).

This case involves a claim of breach of fiduciary duty asserted by an employer against a high level management employee. Following its review of the pertinent Maryland cases, this Court concludes that plaintiff has, on the facts here, asserted a viable claim against defendant Atkinson for breach of fiduciary duty.

■ Although the Court of Appeals of Maryland in *Kann* concluded that there is no universal omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries, it went on to state that "[t]his does not mean that there is no claim or cause of action available for breach of fiduciary duty." *Id.* at 710, 690 A.2d 509. Counsel in a case of the sort involved here are required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available and select those remedies appropriate to their client's problem. *Id.* at 713, 690 A.2d 509.

■ Those requirements have been met in this case. Atkinson was a high level management employee of plaintiff BEP. It is alleged that Atkinson breached the fiduciary duty owed by him to his employer by undertaking a pattern of conduct to divert the business of BEP's largest customer to himself and his corporation. It is further alleged that Atkinson's breach caused BEP to suffer a loss, and compensatory damages are here sought by plaintiff BEP. This Court concludes that plaintiff has,

pursuant to *Kann*, properly asserted under Maryland law a claim of breach of fiduciary duty.

Defendants contend that, even if plaintiff has alleged a viable claim of breach of fiduciary duty, the facts here do not as a matter of law support such a claim. Citing *Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 382 A.2d 564 (1978), defendant Atkinson argues that he was privileged to plan and prepare for future competition with his employer and that the facts of record do not show that he diverted unto himself a corporate opportunity which "in fairness" should belong to BEP. *Id.* at 45 n. 5, 382 A.2d 564.

Following its review of the *Metzner* opinion, this Court concludes that it in fact supports plaintiff's claim that defendant Atkinson breached the fiduciary duty owed by him to BEP. In *Metzner*, the employer's complaint charged two high level managerial employees with breach of fiduciary duty. The trial court dismissed the employer's complaint, and the Court of Appeals affirmed. In affirming, the Court of Appeals considered two important and oft-times conflicting policies. *Id.* at 37, 382 A.2d 564 The first of these policy considerations is that commercial competition must be conducted according to basic rules of honesty and fair dealing. *Id.* Because corporate managerial personnel enjoy a high degree of trust and confidence in performing their assigned functions, the potential exists for serious abuse of confidentiality whenever such personnel attempt to aggrandize their own economic interest at the expense of the employer. *Id.* Fairness dictates that an employee not be permitted to exploit the trust of his employer so as to obtain an unfair advantage in competing with the employer in a matter concerning the latter's business. *Id., citing Kademenos v. Equitable Life Assurance Soc. of U.S.*, 513 F.2d 1073, 1076 (3d Cir.1975).

This concern for the integrity of the employment relationship has led courts to establish a rule that demands of a high level employee an undivided and unselfish loyalty to the corporation. *Id.* at 37–38, 382 A.2d 564. The Court of Appeals has accordingly read into every contract of employment an implied duty that an employee must act solely for the benefit of his employer in all matters within the scope of employment, "avoiding all conflicts between his duty to the employer and his own self interest." *Id.* at 38, 382 A.2d 564, citing, *inter alia, C–E–I–R, Inc. v. Computer Corp.*, 229 Md. 357, 366, 183 A.2d 374 (1962).

A direct corollary to this general principle of loyalty is that a high echelon employee is barred "from actively competing with his employer *during* the tenure of his employment" even in the absence of an express covenant so providing. *Id.*, (emphasis in original), *citing Ritterpusch v. Lithographic Plate*, 208 Md. 592, 602, 119 A.2d 392 (1956). Thus, prior to his termination, an employee may not solicit for himself business which his position requires him to obtain for his employer. Rather, he must refrain from actively and directly competing with his employer for customers and employees, and must continue to exert his best efforts on behalf of his employer. *Id.*, *citing C–E–I–R, Inc.*, 229 Md. at 366, 183 A.2d 374. Once the employment relationship comes to an end, the employee is at liberty to solicit his former employer's business and employees, subject to restrictions concerning the misuse of trade secrets and confidential information. *Id.*

In *Metzner*, the Court of Appeals went on to discuss the competing policy, which is that of safeguarding society's interest in fostering free and vigorous competition in the economic sphere. *Id.* at 38–39, 382 A.2d 564. While an employee is

under an obligation to be candid with his employer in preparing to establish a competing enterprise, he is not bound to reveal the precise nature of his plans to the employer unless he has acted inimically to the employer's interest beyond the mere failure to disclose. *Id.* at 40, 382 A.2d 564. The Court recognized, however, that the right to make arrangements to compete is by no means absolute. The exercise of the privilege may, in appropriate circumstances, rise to the level of a breach of the employee's fiduciary duty of loyalty. *Id.* Thus, the privilege has not been applied to immunize employees from liability where the employee has committed an unfair or wrongful act in the course of preparing to compete in the future, including solicitation of the employer's customers prior to the cessation of employment and the usurpation of an employer's business opportunity. *Id.* at 40–41, 382 A.2d 564.

In *Metzner,* the Court of Appeals determined that there was no conduct of the employees in that particular case which was unfair, wrongful or inimical to the employer's interest, inasmuch as the activities in question were manifestly preparatory in nature. *Id.* at 43–44, 382 A.2d 564. There was in *Metzner* no serious conduct like that in *Ritterpusch* where the Court upheld a jury verdict for the employer against an employee who had actively solicited the employer's major customers on behalf of a competitor with whom the employee intended to associate. *Id.* at 44, 119 A.2d 392.

■ In this case, the record establishes as a matter of law that defendant Atkinson, during the tenure of his employment, engaged in conduct which the Court in *Metzner* determined to be a breach of the fiduciary duty owed by a managerial employee to his employer. While employed by BEP, Atkinson took concrete steps to have Ecolab's business diverted from BEP to a new corporation which he intended to form. In his letter of July 15, 1998 to Schafers, Atkinson stated that he was currently negotiating for warehouse space at another location. In that letter, he assured Schafers that there would be no adverse changes in service to Ecolab or its customers "as all delivery drivers, warehouse and clerical staff will be relocating to the new facility."

For several years, Atkinson had been responsible for overseeing the warehouse operations at BEP. Atkinson was a high level management employee earning some $100,000 annually. He and Norma Buscillia ("Buscillia") were running the business for Nash and splitting the profits. Atkinson knew that the $1 million Ecolab account constituted some 90% of BEP's business and that the diversion of Ecolab's operations to his own new warehouse would have had a devastating effect on BEP. Before he was fired, he acted secretly and never told Nash or Buscillia of his plans to take the Ecolab account away from BEP.

Defendants argue that there is no evidence in the record of substantive negotiations between Atkinson and Ecolab before September 4, 1998 and contend that Atkinson did not speak to BEP drivers and employees until after he was fired. On the record here, the Court must disagree.

Between April and July of 1998, Atkinson spoke with Macrae three or four times (Tr. 38).[4] Atkinson had looked at seven or eight warehouses before mid-July (Tr. 41). Macrae came down in July and met with Atkinson and his real estate agent. They

---

4. References are to the transcript of Atkinson's deposition testimony taken in the *Eco-* *lab* case on June 16, 1999.

met at the one warehouse which Atkinson had selected, and Macrae inspected it for some thirty minutes (Tr. 53). According to Atkinson, Macrae was impressed and stated that Ecolab was leaning towards going with Atkinson (*Id.*).

By mid-July, Atkinson had talked to all seven of the drivers (Tr. 45). All of them said that they would be interested in moving and working for Atkinson. *Id.* Sharon McKeyson was a member of BEP's clerical staff. By mid-July, Atkinson had talked to her about moving, and she had agreed to do so. (Tr. 49). In his letter of July 15, 1998 to Schafers, Atkinson confirmed that delivery drivers and clerical staff "will be relocating to the new facility."

On the record here, this Court finds and concludes as a matter of law that, while still employed by BEP, Atkinson engaged in substantive conduct which breached the fiduciary duty owed by him to his employer. His wrongful conduct included solicitation of his employer's primary customer prior to the cessation of employment, (*see Ritterpusch,* 208 Md. at 602, 119 A.2d 392) and also his recruitment of key drivers and other personnel for his project without his employer's knowledge (*see C–E–I–R, Inc.,* 229 Md. at 367–68, 183 A.2d 374).

■■■■ There is no merit to defendants' argument that plaintiff is not entitled to recover lost profits based on Atkinson's breach of fiduciary duty. His acts were independently wrongful and support a tort claim for damages. *See Kramer v. Mayor & City Council of Baltimore,* 124 Md.App. 616, 640, 723 A.2d 529 (1999). It is quite clear from the evidence that BEP was able to retain Ecolab's business only by offering it a 25% discount for a one year period. Had Atkinson not acted as he did, BEP would have received from Ecolab the additional sum of $22,496.46 for the period in question. Moreover, the recovery to which plaintiff is entitled is not subject to any reduction because, after Atkinson was fired, his replacement was paid lesser compensation.[5] BEP had the right to reduce its costs in any manner deemed appropriate, and Atkinson is not entitled to the benefit of any such cost reduction.

For these reasons, this Court concludes that plaintiff BEP is entitled to partial summary judgment on Count I of the complaint. Defendants' motion for summary judgment will be denied as to Count I, and judgment will be entered on that Count in favor of plaintiff BEP in the amount of $22,496.46 plus costs.

### (b)
### Civil Conspiracy

In Count II of its complaint, plaintiff alleges that defendants Mary Atkinson and AWD acted in concert with and aided and abetted William Atkinson in his breach of fiduciary duty. Plaintiff seeks a recovery under Count II under a theory of civil conspiracy.

■■■■ A civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff. *Green v. Washington Sub. San. Commission,* 259 Md. 206, 221, 269 A.2d 815 (1970). An "unlawful act," as required to be alleged and proved in order to recover in a civil action for conspiracy, is not necessarily a criminal act. *Columbia Real Estate Title Insurance Co. v. Caruso,* 39 Md.App. 282, 288, 384 A.2d 468

---

5. Although they contend that plaintiff's payroll savings resulted in a mitigation of the damages which may be claimed, defendants have not disputed the fact that the 25% discount resulted, mathematically, in a loss to BEP in the amount of $22,496.46.

(1978). There must be a violation of a legal right committed knowingly to create a cause of action. *Id.*

■■■■ Both AWD and Mary Atkinson have been charged in Count II with conspiring with William Atkinson in his breach of fiduciary duty. But, before he was fired, Atkinson could not have been a member of a conspiracy with AWD because that corporation was not in existence at the time of the alleged tort. Moreover, a conspiracy between a corporation and its agent acting within the scope of his employment is a legal impossibility. *Kairys v. Douglas Stereo, Inc.*, 83 Md.App. 667, 683, 577 A.2d 386 (1990), *overruled on other grounds, Montgomery Ward v. Wilson*, 339 Md. 701, 664 A.2d 916 (1995).

■■■■ Facts of record here further establish as a matter of law that Mary Atkinson cannot be held to be a member of the alleged conspiracy. She was not an officer, director or high level manager of BEP. She was merely a part time employee and owed no fiduciary duty to her employer. The fact that Mary Atkinson typed several letters for her husband's signature does not constitute a violation of a legal right of BEP, committed by her knowingly. Since Mary Atkinson cannot be held to be responsible for the underlying tort of breach of fiduciary duty, she cannot be held liable under a conspiracy theory. Tort liability arising from a conspiracy presupposes that the coconspirator is legally capable of committing the tort, that is, that she owes a duty to the plaintiff recognized by law and is potentially subject to liability for breach of that duty. *Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal.4th 503, 511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). A cause of action for civil conspiracy may therefore not arise if the alleged conspirator, though allegedly a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing. *Id.* at 512, , 28 Cal.Rptr.2d 475, 869 P.2d 454.

For these reasons, plaintiff's claim of civil conspiracy alleged in Count II of the complaint must fail. Plaintiff's motion for summary judgment as to Count II will therefore be denied, and defendants' motion for summary judgment as to Count II will be granted.

### (c)

### *Punitive Damages*

Plaintiff BEP contends that it is entitled to submit to the jury its claim for punitive damages. In their motion for summary judgment, defendants assert that plaintiff is not, as a matter of law, entitled to recover punitive damages in this case. On the record here, this Court concludes that plaintiff's claim for an award of punitive damages must fail.

■■■■ Under Maryland law, a plaintiff must prove actual malice by clear and convincing evidence in order to recover punitive damages in a tort case. *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 460, 601 A.2d 633 (1992). The trier of fact in a tort action may not award punitive damages unless the plaintiff has established that the defendant's conduct was characterized "by evil motive, intent to injure, ill will or fraud, *i.e.*, 'actual malice.'" *Id.*

In *Adams v. Coates*, 331 Md. 1, 626 A.2d 36 (1993), the Court of Appeals addressed the issue of punitive damages in a case which included a claim of breach of fiduciary duty. In *Adams*, one former partner sued the other in part for breach of fiduciary duty. The Court acknowledged that Maryland had not clearly adopted the tort of breach of fiduciary duty, but assumed for the purposes of that case that the tort did exist and could result in an award of punitive damages. *Id.* at 12, 626 A.2d 36. The Court reasoned that whether or not

punitive damages are available does not depend entirely on the elements of the tort, but depends primarily on Maryland policy. The Court accordingly held that any award of punitive damages recoverable in a tort case for breach of fiduciary duty would be controlled by *Zenobia.*

 Plaintiff has not here produced clear and convincing evidence that defendant Atkinson acted with actual malice. In breaching the fiduciary duty which he owed to BEP, Atkinson was motivated by economic considerations. He sought to compete with BEP and gain for himself the business relationship which Ecolab had enjoyed with BEP over a period of many years. No evil or rancorous motive existed. Although plaintiff is entitled to recover compensatory damages, it is not under *Zenobia* entitled to an award of punitive damages in this case. Accordingly, defendants are entitled to summary judgment as to plaintiff's claim for punitive damages.

## V

### Conclusion

For all these reasons, plaintiff's motion for partial summary judgment will be granted in part and denied in part. Summary judgment in favor of plaintiff will be granted as to Count I, and judgment under that Count will be entered in favor of plaintiff in the amount of $22,496.46, plus costs. Plaintiff's motion for partial summary judgment will be denied as to Count II.

Defendants' motion for summary judgment will be granted in part and denied in part. Defendants' motion will be denied as to Count I but granted as to Count II. Summary judgment in favor of defendants will be granted as to plaintiff's claim for punitive damages. An appropriate Order will be entered by the Court.