PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1940

WILLIAM AUBREY MARSHALL,

              Plaintiff - Appellant,

       v.

JAMES B. NUTTER & COMPANY,

              Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.   Richard D. Bennett, District Judge. (1:10-cv-03596-RDB)

Argued: May 14, 2014                    Decided: July 10, 2014

Before NIEMEYER and WYNN, Circuit Judges, and Robert J. CONRAD, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by published opinion.   Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Conrad joined.

**ARGUED**:   Martin Eugene Wolf, GORDON & WOLF, CHTD., Towson, Maryland, for Appellant.   Todd W. Ruskamp, SHOOK, HARDY & BACON L.L.P., Kansas City, Missouri, for Appellee.   **ON BRIEF**: Richard S. Gordon, Benjamin H. Carney, Thomas M. McCray-Worrall, GORDON & WOLF, CHTD., Baltimore, Maryland; Cyril V. Smith, William K. Meyer, ZUCKERMAN SPAEDER LLP, Baltimore, Maryland, for Appellant.   Clayton T. Norkey, Benjamin M. Johnston, SHOOK, HARDY & BACON L.L.P., Kansas City, Missouri, for Appellee.

NIEMEYER, Circuit Judge:

William Marshall, a resident of Baltimore, Maryland, who borrowed $252,000 from Savings First Mortgage, LLC, in a reverse mortgage transaction, commenced this action against James B. Nutter & Company, which purchased the mortgage from Savings First, alleging that Nutter was liable for conspiring with Savings First to violate the Maryland Finder's Fee Act. Marshall alleged that Savings First collected $3,666 in fees from him at closing, in violation of Md. Code Ann., Com. Law § 12-804(e), which prohibits a mortgage broker from "charg[ing] a finder's fee in any transaction in which the mortgage broker . . . is the lender," and that because Nutter funded the loan pursuant to a preexisting agreement, it was liable as a civil coconspirator.

The district court held that Nutter could not be a violator of § 12-804(e) because that statute regulates only mortgage brokers and Nutter was not a "mortgage broker" in the transaction. The court concluded that because Nutter was not "legally capable" of violating the Act, it could not, under Shenker v. Laureate Education, Inc., 983 A.2d 408 (Md. 2009), be held liable for conspiring with Savings First to violate the Act. Accordingly, it granted Nutter's motion for summary judgment.

We agree and affirm.

2

Following Savings First's solicitation, Marshall entered into a reverse mortgage transaction on September 11, 2008. A reverse mortgage loan provides cash payments to the borrower based on the equity that the borrower has in his house. At the closing, Marshall executed a $252,000 note payable to Savings First and a deed of trust on his house on Payson Street in Baltimore to secure the note. Under the reverse mortgage, the amount of the note covered the payment of Marshall's prior mortgage, a cash payment to him at closing of $6,639, and the payment of future cash advances. It also covered the costs and fees of the transaction, including the payment to Savings First of a "loan origination fee" of $3,360 and a "correspondent fee" of $305.56. All closing documents designated Savings First as the lender.

During the closing, Savings First assigned the mortgage to Nutter, which "table funded" the loan. Table funding is a term of art referring to "a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." 12 C.F.R. § 1024.2. Nutter's table funding of Marshall's loan was pursuant to its prior agreement with Savings First "to underwrite and table fund each Reverse Mortgage Loan" that Savings First made.

Marshall commenced this class action against Nutter in the Circuit Court for Baltimore City on September 22, 2010, alleging that Nutter had "conspired with mortgage brokers" to violate a provision of the Maryland Finder's Fee Act that prohibits a mortgage broker from charging "a finder's fee in any transaction in which the mortgage broker . . . is the lender." Md. Code Ann., Com. Law § 12-804(e). He alleged that "Savings First acted as both the mortgage broker and as the nominal mortgage lender," while "Nutter table-fund[ed] the mortgage loan and act[ed] as the funding lender." Thus, as alleged, the $3,665.56 in fees that Savings First charged Marshall were "finder's fees" collected in violation of § 12-804(e). Marshall did not, however, name Savings First as a defendant. Rather, he sued only Nutter, asserting that Nutter was liable for conspiring with Savings First and other unnamed "mortgage brokers" to violate the Act. Specifically, he alleged that Nutter conspired "by reaching an agreement and understanding with mortgage brokers to table-fund mortgage loan transactions . . . [in which] brokers acted as both mortgage broker and lender, thereby enabling brokers to charge unlawful finder's fees."[1] Marshall

_____

[1] Marshall also alleged that Nutter conspired to commit unfair and deceptive trade practices, in violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-303. That count, however, was voluntarily dismissed and is not before us.

4

sought to represent a class of similarly situated borrowers and demanded judgment of three times the amount of all finder's fees collected, plus attorneys' fees and costs.

After removing the action to federal court and conducting discovery, Nutter filed a motion for summary judgment on Marshall's conspiracy claim, which the district court granted. In doing so, the court relied on Shenker, which held that "a defendant may not be adjudged liable for civil conspiracy unless that defendant was legally capable of committing the underlying tort alleged."  983 A.2d at 428.  The district court concluded that "only mortgage brokers are 'legally capable' of violating the Maryland Finder's Fee Act" and therefore that Nutter, which the complaint alleged was a "funding lender" and not a mortgage broker, could not be held liable for conspiring to violate the Act.

From the district court's final judgment dated July 22, 2013, Marshall filed this appeal.[2]

---

[2] Marshall has also filed a motion to certify the legal questions addressed in this appeal to the Maryland Court of Appeals.  Because we find that Maryland law unambiguously resolves those questions, we deny the motion. See Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994) ("Only if the available state law is clearly insufficient should the court certify the issue to the state court").

Marshall contends that the district court "misinterpret[ed] and misappli[ed] [the] Maryland Court of Appeals' decision in Shenker" to conclude "that there [can] be no civil conspiracy liability by a non-broker for violation of the [Finder's Fee Act]." He asserts that the district court's ruling "undermines the very nature of conspiracy as a means of imposing vicarious liability upon parties for all acts committed pursuant to an agreement to commit a tort or violate a statute." He urges us to hold instead that Nutter did not need to act as a mortgage broker to be legally capable of violating the Finder's Fee Act and that the district court therefore erred in entering judgment in Nutter's favor.

Nutter contends, on the basis of Shenker, that "a civil conspiracy claim requires proof that the defendant was 'legally capable' of committing the wrongdoing underlying the conspiracy." It argues that, because § 12-804(e) only applies to mortgage brokers and because it did not function as a mortgage broker, it was not legally capable of violating the provision, as necessary to support a conspiracy claim.

Thus, the sole question presented is whether, under Maryland law, a non-broker may be held liable for conspiring with a mortgage broker to violate § 12-804(e), which states that "[a] mortgage broker may not charge a finder's fee in any

transaction in which the mortgage broker . . . is the lender."

Md. Code Ann., Com. Law § 12-804(e).[3]

We begin by noting that the Finder's Fee Act itself does not prohibit conspiracy to collect unlawful finder's fees, nor does it provide a cause of action to recover for conspiracy to violate the Act's terms. Instead, the remedy section states simply that "[a]ny mortgage broker who violates any provision of this subtitle shall forfeit to the borrower the greater of: (1) [t]hree times the amount of the finder's fee collected; or (2) [t]he sum of $500." Md. Code Ann., Com. Law § 12-807 (emphasis added). Thus, Marshall's entitlement to relief must stem not from the Finder's Fee Act itself, but instead from Maryland common law governing civil conspiracy.

Under Maryland law, civil conspiracy is defined as the "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." Hoffman v. Stamper, 867 A.2d 276, 290 (Md. 2005) (quoting Green v. Wash. Suburban Sanitary Comm'n, 269 A.2d 815, 824 (Md. 1970)) (internal

_____

[3] We note that Nutter never argued that Savings First was not a "mortgage broker" within the meaning of the Finder's Fee Act. Cf. Petry v. Prosperity Mortg. Co., ___ F.3d ___, No. 13-1869 (4th Cir. July 10, 2014).

quotation marks omitted).  In addition to proving an agreement, "the plaintiff must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury."  Id.  The agreement itself is not actionable under Maryland law "but rather is in the nature of an aggravating factor" with respect to the underlying tortious conduct.  Id.  Indeed, the Maryland Court of Appeals has consistently maintained that "conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff."  Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc., 665 A.2d 1038, 1045 (Md. 1995) (quoting Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., 650 A.2d 260, 265 n.8 (Md. 1994)) (internal quotation marks omitted).  As the Alleco court explained:

> There is no doubt of the right of a plaintiff to maintain an action on the case against several, for conspiring to do, and actually doing, some unlawful act to his damage. . . .  It is not, therefore, for simply conspiring to do the unlawful act that the action lies.  It is for doing the act itself, and the resulting actual damage to the plaintiff, that afford the ground of the action.

Id. (quoting Kimball v. Harman, 34 Md. 407, 409-11 (1871)) (internal quotation marks and citation omitted); see also id. ("'No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort'" (quoting Domchick v.Greenbelt Consumer Servs., Inc., 87

8

A.2d 831, 834 (Md. 1952)).  Thus, civil conspiracy requires an agreement, and an overt act in furtherance of the agreed-to unlawful conduct that causes injury, as well as the legal capacity of the conspirators to complete the unlawful conduct.

Building on this understanding of civil conspiracy, the Maryland Court of Appeals held in 2009 that "a defendant may not be adjudged liable for civil conspiracy unless that defendant was legally capable of committing the underlying tort alleged." Shenker, 983 A.2d at 428.  In Shenker, shareholders of Laureate Education, Inc., alleged that the members of the company's board of directors had breached their fiduciary duties when negotiating the price that the shareholders would receive in a "cash out merger," a type of merger where minority shareholders are forced to take cash for their shares, thus freezing them out of the merger.  The shareholders also sued several third-party investors who had joined two defendant board members in acquiring the company, alleging that the third-party investors were liable for conspiring with the board members in their breach of their fiduciary duties.  In dismissing the civil conspiracy claim against the third-party investors, the Shenker court explained:

> "[T]ort liability arising from a conspiracy
> presupposes that the coconspirator is legally capable
> of committing a tort, that is, that [the
> coconspirator] owes a duty to the plaintiff recognized
> by law and is potentially subject to liability for

9

> breach of that duty." . . . . "[A] cause of action for civil conspiracy may therefore not arise if the alleged conspirator, though allegedly a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing."

Id. at 428-29 (quoting Bahari v. Countrywide Home Loans, No. 05-2085, 2005 WL 3505604, at *6 (D. Md. Dec. 16, 2005); BEP, Inc. v. Atkinson, 174 F. Supp. 2d 400, 409 (D. Md. 2001)). Consequently, the Shenker court concluded that "in Maryland, liability for civil conspiracy based on the underlying tort of breach of fiduciary duty (were it recognized) would require proof that the defendant, although not committing personally the underlying tort, was legally capable of committing the underlying tort." Id. at 429. Thus, the court held that the shareholders' civil conspiracy claim against the third-party investors had been properly dismissed because the investors owed no fiduciary duties to the shareholders and therefore could not be legally liable for civil conspiracy. Id.

We conclude that the district court correctly applied Shenker to Marshall's civil conspiracy claim against Nutter. Marshall sought to hold Nutter liable for conspiring with Savings First and other mortgage brokers to violate § 12-804(e), which prohibits mortgage brokers from charging finder's fees in any transaction in which they are also the lender. This provision imposes a duty only on mortgage brokers, and therefore

10

only mortgage brokers are capable of violating it. Since it is uncontested that Nutter was not functioning as a mortgage broker but, as Marshall alleged in his complaint, as the "funding lender," Nutter was not legally capable of violating § 12-804(e) and therefore, under Shenker, cannot be held liable for conspiring to violate § 12-804(e).

To avoid this fairly straightforward conclusion, Marshall contends that the district court improperly limited "conspiracy claims solely to direct perpetrators of the underlying wrong." (Emphasis added). This argument, however, misconstrues the district court's ruling. The district court did not hold that Nutter had to be a direct perpetrator of § 12-804(e); rather, it held, in applying Shenker, that Nutter had to be "legally capable" of committing such a violation before it could be held liable for conspiracy. Because § 12-804(e) only regulates the conduct of mortgage brokers, only mortgage brokers can violate it.

Marshall also argues that the district court misapplied Shenker because lenders like Nutter are in fact "legally capable" of violating the Finder's Fee Act. He contends, in this regard, that the "[Finder's Fee Act] regulates lenders, and there is nothing standing in the way of a lender such as Nutter acting as a 'mortgage broker.' Thus, Nutter is 'legally capable' of violating the Act." But the fact that Nutter could

11

hypothetically act as a mortgage broker in some transaction and then be bound by § 12-804(e) is irrelevant. The duty alleged to have been violated in this case was one imposed on mortgage brokers to refrain from charging "a finder's fee in any transaction in which the mortgage broker . . . is the lender." Md. Code Ann., Com. Law § 12-804(e). As Nutter did not function as a mortgage broker, but rather as a funding lender, Nutter was "not personally bound by the duty violated by the wrongdoing" and therefore could not be held liable for conspiring with others to commit that wrongdoing. Shenker, 983 A.2d at 429 (quoting BEP, 174 F. Supp. 2d at 409) (internal quotation marks omitted).

Finally, Marshall argues that Shenker's "legally capable" requirement is satisfied as long as the defendant owed the plaintiff any duty of care. He maintains that Nutter owed him and other borrowers duties of care in its capacity as a lender under other provisions of the Finder's Fee Act, as well as under Maryland regulations and common law. But, as Shenker made clear, the defendant must be "legally capable of committing the underlying tort alleged." 983 A.2d at 428 (emphasis added). That Nutter was potentially subject to liability for breaching other duties of care is irrelevant to whether it was legally capable of committing the violation alleged by Marshall in this case -- i.e., a violation of § 12-804(e).

12

We thus affirm the district court's judgment dismissing Marshall's claim that Nutter conspired to violate § 12-804(e) of the Finder's Fee Act.

AFFIRMED